

Thomas Houlahan,
Defendant, *pro se.*
4602 43rd Street, NW #1
Washington, D.C. 20016
Telephone (202) 362-5918

**IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| World Wide Association of Specialty Programs and Schools,<br>Plaintiff,<br>vs<br><br>Thomas G. Houlahan,<br>Defendant. | **Defendant's Reply Memorandum to Plaintiff's Opposition to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue**<br><br>Civil No. 2:04CV00107<br><br>Judge Dale A Kimball |

Defendant, Thomas Houlahan, *pro se*, submits this Reply Memorandum in response to Plaintiff's Opposition to his Motion to Dismiss.

Plaintiff's memorandum opens with the unsupported allegation that Defendant "has not been forthright" with the court. This is an attempt to shift the burden of pleading and production onto Defendant, contrary to the settled rule as indicated by the unchallenged authorities cited in Defendant's main memorandum. Plaintiff would have Defendant assume the impossible task of proving a general negative. Defendant has addressed by affidavit each of Plaintiff's specific allegations of defamation, none of which occurred in Utah. The attached affidavit of attorney Burton (Exhibit 3) confirms that Defendant's only contact with him was outside Utah.

8

Defendant, by the attached Defendant's Second Affidavit specifically denies making any defamatory statements about Plaintiff's Utah Schools or about any of its schools to persons in Utah. Despite conclusory allegations of general and special damage, Plaintiff has offered no evidence of any discernable effect in Utah, much less the kind of purposeful connection required to support jurisdiction or the "events or omissions" required by the venue statute.

Plaintiff argues (1) that the court has personal jurisdiction under a so-called effects test; (2) that it should be allowed discovery to search for the missing jurisdictional facts; and (3) that the hypothetical effects in Utah make venue proper in this District.

## I. Personal Jurisdiction and In-State Effects.

### A. Effects are Not Enough to Meet Constitutional Requirements.

The short answer to Plaintiff's argument is that there is no independent "effects test" for personal jurisdiction. The phrase is convenient shorthand for one aspect of personal jurisdiction analysis in tort cases, but more is required. In both *Worldwide Volkswagen v. Woodson*, 444 U.S. 70 (1980), and *Asahi Metal Industry Co. v. Superior Court*, 489 U.S. 102 (1987) all of the relevant effects of the Defendants' alleged tort were physical, undenied, forseeable, and confined to the forum state, yet the attempted assertion of jurisdiction failed. "[T]he constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 474 (1984) (emphasis added). The relevant "contacts, ties or relations" must be with the forum, not the plaintiff. *Id.* at 472.

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a defamation case cited by Plaintiff, is the baseline for effects analysis, but it is very different from the present suit.

In that case the alleged libels were intended to be and actually were published in approximately 600,000 copies of the National Enquirer in California and were entirely about events alleged to have occurred there. "The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California." *Id.* at 788. Most if not all the non-party witnesses on the issue of the truth of the allegations of intoxication would apparently have been in California.

In the present suit the only identifiable alleged defamatory statements were made outside Utah in individual conversations about the operation of schools in New York, Jamaica and Mexico. Defendant has consistently made distinctions among Plaintiff's schools. For example, he pointed out that Tranquility Bay has a very different history of physical restraint than Casa by the Sea. (Defendant's Second Affidavit ¶ 15)

Plaintiff is a corporation with a multi-state, multi-national market and operation which it characterizes as including "the specialty school community, and the community of parents seeking residential treatment for troubled youth." (Plaintiff's Opposition, pg. 9.) Only two of its schools are in Utah. Neither was mentioned in the Complaint.

The Tenth Circuit has specifically held that *Calder* did not eliminate the "purposeful availment" requirement for tortious interference type cases in *Far West Capital, Inc. v. Townee*, 46 F.3d 1071 at 1079 (10th Cir. 1995).

Plaintiff is unable to demonstrate that Defendant purposely availed himself of the privilege of conducting activities Utah, or that he committed any tortious act in Utah, or even that his actions in any other state had effects in Utah. Plaintiff has therefore seized upon Defendant's report of alleged violations at a South Carolina school to the South Carolina Department of Social

Services and attempted to portray it as proof of a vendetta to support a claim that his "target" was World Wide in Utah. Defendant vehemently denies such a vendetta and addresses by affidavit the bases for contacting SCDSS and for the statements he made in the course of that contact. (Defendant's Second Affidavit ¶ 7-15) However, even if this was a vendetta, that in itself would be irrelevant. The issue here is jurisdiction and minimum contacts with Utah, which are entirely lacking.

**B. None of Plaintiff's Authorities Support Jurisdiction in this Case.**

Plaintiff cites this court's decision in *Systems Designs Inc. v. New Customware* Co., Inc. 248 F. Supp 2d (D. Utah 2003), a trademark infringement case. In that case, the court said "Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits of its laws." *Id.* at 1097. There were several key contacts, all missing from the present case, including (1) an interactive "website intended to reach potential customers of [the Plaintiff] in Utah; and, (2) advertisements in a "nationally-distributed trade magazine" admitted to have nearly 1,000 actual sales in Utah in a single month. The court considered whether the infringement of a mark federally-registered to a Utah company could alone satisfy jurisdictional requirements "[i]n light of easy nationwide accessibility of the trademark registry," *Id.* at 1099, but found it unnecessary to decide that question. It would seem, however, that theory would be inapplicable in the present case: "No other tort (except possibly patent infringement) provides this kind of advance notice regarding location." *Id.* It also seems that New Customware admitted using the mark and relied

solely on affirmative defenses, whereas in this case Defendant strenuously denies defaming Plaintiff.

Plaintiff's other citations also turn on *purposeful* contacts: In *Burt v. Board of Regents of the University of Nebraska*, 757 F.2d242 (10th Cir. 1985) the alleged defamatory statements were contained in a letter intentionally sent by the defendant into the forum. In *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946 (D. Utah 1985), the alleged defamatory communications were by telephone calls into Utah from the defendant to the plaintiff's customers and the Utah Insurance Commission. *Romney v. St. John Virgin Grand Villas Associates*, 734 F.Supp 957 (D. Utah 1990) was a contract case where the defendant initiated contact with plaintiff by calls into Utah and contracted for services largely to be performed in Utah. Both negotiations and performance involved direct communications to and from Utah "via telephone, Federal Express and mail." *Id.* at 961. Personal jurisdiction was found *lacking* in *Hydro Engineering Inc., v. Landa, Inc.* 231 F.Supp.2d 1130 (D. Utah 2002) despite the possibility that at least three addressees of the allegedly defamatory mass e-mail were in Utah. In the present case there has been no attempt to show publication of any statements by Defendant in Utah.

**C. Utah Rejects Plaintiff's Jurisdictional Theory**

Plaintiff argues that *Harnischfegger Engineers v. Uniflo Conveyor*, 883 F. Supp. 608 (D. Utah 1995) applies only to cases where the alleged damage in Utah is loss of profits, while it claims damage to "reputation, goodwill, and standing." Even assuming those generalities encompass something other than financial loss in the case of a corporation, the argument is mistaken. *Harnischfegger* was an action just like this case— for alleged tortious interference

and defamation by criticism in other states of the Plaintiff's operations. *Id.* at 613. An unbroken line of Utah cases in both the state and federal courts has rejected Plaintiff's theory that actions completed in other states can be the basis of jurisdiction solely because of effects on a Plaintiff headquartered in Utah. The holding in the seminal case is explicit: "We believe that the same amendment [the 14th] would protect one from being subject to the jurisdiction of the courts of this state, where he allegedly committed a tort such as claimed here, *or a slander or the like in a sister state*, but not in Utah, on grounds of denial of due process of law." *Hydroswift Corporation v. Louie's Boats and Motors, Inc.*, 494P.2d 532, 533 (Utah) (emphasis added).

**D. Fair Play and Substantial Justice**

Plaintiff has responded to none of Defendant's arguments on this point. The relative burden of litigation on the parties, the availability of witnesses on both the claim and counterclaim, and the interest of other states regarding privileged communications with courts and public agencies all weigh against further proceedings in Utah.

**II. Jurisdictional Discovery is Inappropriate in this Case**

There is a threshold test for jurisdictional discovery. "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Such a colorable or prima facie showing requires pleading facts, not a legal formula. In *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) the plaintiff's jurisdictional theory was that Nissan was present in New York

because of the activities of its subsidiary as an "agent" or "mere department." The Court held that discovery would have been improper.

> The Jazinis alleged only that Nissan U.S.A. "is able to act as would its parent, were [Nissan Japan] directly present in the State of New York." This conclusory statement is but a restatement, with slight changes, of the legal standard.... It states no facts supporting that conclusion and does not constitute a prima facie showing of agency. *Id.* at 184.

Similarly, in the present case, Plaintiff's jurisdictional allegation is that: "Houlahan has caused injury to World Wide in Utah through his false, misleading and defamatory statements published to parents of students, and former students of World Wide member schools," and that, "[u]pon information and belief, Houlahan has published defamatory statements concerning plaintiffs to Utah residents and members of the Utah State Bar." Although they filed this case four months ago, Plaintiffs have been unable to produce a single affidavit supporting these conclusions.

Plaintiff's authorities are merely cases where the threshold was met by specific factual allegations. In *Sizova v. National Institute of Standards & Technology*, 282 F.3d 1320 (10th Cir. 2002) the question was subject matter jurisdiction in a Title VII suit, which turned on whether Plaintiff had exhausted her administrative remedies. There were very specific factual allegations about two different attempts by the plaintiff to file a complaint with a named EEO specialist in the NIST office. *Id.* at 1323. Similarly, in *Toys "R" US, Inc. v. Step Two, S.A.*, 318 F3d 446 (3rd Cir. 2003) the court accepted the prima facie threshold rule but concluded the plaintiff had met its burden to present factual allegations with reasonable particularity. *Id.* at 456. This was a trademark infringement case where, in addition to an interactive website, Plaintiff was able to identify some actual sales of the alleged infringing products to residents of the forum, some

actual follow-up confirming and promotional e-mails into the forum, and purchases in the forum of merchandise thereafter sold as part of the alleged infringement.

In the present case, Plaintiff has submitted no affidavits. The only specific allegations of injurious acts in the Complaint are of alleged torts completed entirely outside Utah, as shown in uncontradicted Affidavits filed with the original motion to dismiss and this Reply. Plaintiff's only alleged ground for jurisdiction is tortious injury within the state under Utah Code 78-27-24 (3). Plaintiff places great emphasis on two words— investigation and research (which they *assume* must involve significant contacts with Utah)— neither of which is a tort. The Complaint deals with charges made against schools in New York, Jamaica and Mexico. Each alleged defamation was about one of those schools. Defendant has declared under oath that he has not made defamatory accusations about the schools in Utah. (Defendant's Second Affidavit ¶ 6) In a specific jurisdiction case the threshold for jurisdictional discovery requires allegations of facts that would establish jurisdiction— not just possible contacts, but contacts from which the cause of action arises. This was a key failing in *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d (5th Cir. 2000), where the court stated:

> Appellants' brief does *not* describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction for Syria Shell. In any event, *no* amount of information on Syria Shell's contacts with Texas, … could strengthen appellants' assertion of specific jurisdiction for Syria Shell, because, as stated, their claims did *not* arise from such contacts. *Id.* at 855.

Plaintiff in the present case asks (without a specific motion) for a Defendant's deposition, "and production of documents including notes, e-mails, and other contacts." Unable to find any connection to Utah, Plaintiff would drag Defendant and the Court into the complex, difficult, and

highly contested issues raised by an attempt to compel revelation of an investigative reporter's sources in the hope something might turn up.

Even under its "effects" theory, Plaintiff would not have a prima facie jurisdictional argument. There is no affidavit by any identifiable person in Utah who claims to have heard, or, excepting the Plaintiff, to have heard *about* a defamatory statement made by the Defendant. Indeed, Plaintiff has not even alleged this. For pleading or choice of law purposes damages from defamation are sometimes presumed to occur or to occur at the Plaintiff's domicile but these are legal fictions, not jurisdictional facts. Plaintiff has offered no facts to meet the threshold requirements for jurisdictional discovery.

Plaintiff's theory undermines the principle of limits on personal jurisdiction. Plaintiffs essentially argue that they have a right to subject Defendant to discovery in a court more than 1,800 miles from his home and place of business on the perverse ground that they lack sufficient information on which to base personal jurisdiction. Such a lack of information is grounds for dismissal, not discovery.

**III. Improper Venue is an Independent Reason to Dismiss**

Plaintiff essentially re-asserts the discovery and effects arguments on the venue issue. Defendant has replied above. However, Plaintiff's effects argument is particularly mistaken when applied to venue. The statutory language requires that "a substantial part of the events or omissions *giving rise to the claim*" have occurred in the District of Utah. 28 U.S.C. 1391 (a)(2) emphasis added. In derivative actions, the limit of personal jurisdiction is the constitutional power of the forum state. In contrast, the venue statute reflects the judgment of Congress

regarding the burdens of litigation. Plaintiff's theory would result automatic venue at the plaintiff's residence in defamation cases. Yet, in 1990 Congress eliminated venue based on the plaintiff's residence. (Act of Dec. 1, 1990, Pub. L. 101-650, title III, § 311) Congress also has made a clear and significant distinction between corporations and natural persons. Under 28 U.S.C. 1391 (c) a corporation is deemed resident anywhere it is subject to personal jurisdiction for venue purposes, but a natural person is not. When a natural person is being haled into court, Congress has determined that more than minimum contacts is required.

For the reasons set forth above and in his Motion and initial Memorandum Defendant asks the Court to dismiss this case or transfer it to a District such as the District of Columbia where jurisdiction and venue are indisputable.

Respectfully submitted by

Thomas Houlahan,
Defendant, *Pro se.*

Certificate of Service:

I certify that I have served
This Memoradum, with Exhibits 2 and 3 (Affidavits),
on Plaintiff's Counsel this 31st day of May, 2004
by First Class U.S. Mail, postage prepaid,
Addressed to:
Silvester & Conroy, L.C.
230 South 500 East, Suite 590
Salt Lake City, Utah 84102

Thomas Houlahan
Defendant, *Pro se.*

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.